Oral argument not to exceed 15 minutes per side, Mr. Beluso Jr. for the Plaintiff Appellant. Good morning. Good morning. May it please the Court, my name is Gino Beluso. I'm here on behalf of the Plaintiff Appellant, CapWealth Advisors LLC. With the Court's permission, I will reserve three minutes for rebuttal. Very well. And mindful of Judge Griffin's opening admonition, I'll focus my argument on two issues. First, did the District Court err in interpreting the insurance policy at issue to exclude coverage? And then secondly, having done that, did the District Court err in failing to determine whether that interpretation rendered the policy illusory? With regard to the first issue, we submit respectfully that the District Court did err because we have principally two provisions in the policy that are at issue. The insuring clause on the one hand, and this thing called a specific entity exclusion on the other hand. And under the insuring agreement, the defendant, Twin City, agreed to pay and defend claims arising out of what are defined as investment advisor professional services. And those claims, including claims by the Securities and Exchange Commissions for issuing subpoenas, issuing these things called Wells Notices, and filing lawsuits. And that's exactly what happened in the trial courts below. The Securities and Exchange Commission filed a Wells Notice against CapWealth and its advisors and then actually filed a lawsuit. CapWealth turned the defense of the case over to Twin City, which declined. They denied coverage on the basis that they had this specific entity exclusion that said that they will not cover any claims that arise from or relate to CapWealth Investment Services or its directors, officers, or employees. And CapWealth Investment Services was a former related party to CapWealth Advisors. CapWealth Advisors is a registered investor. What's your argument as to why the exclusion does not apply? Setting aside your argument about making the contract illusory. It does not apply, Judge Bush, because it renders the policy ambiguous when you look at the insuring agreement. The insuring agreement specifically states that it provides coverage to insured persons, which include Mr. Pagliara and Mr. Murphy, who were the two investment advisors for CapWealth Advisors LLC. When you look at the specific entity exclusion, it specifically excludes coverage of those persons, Pagliara and Murphy, because it excluded coverage for any claim relating to an officer or employee. It would still cover claims that relate to their capacities serving for CapWealth. It just excludes them for their services and capacities for CWIS. If the policy did that, I would agree the district court were correct, Judge Bush, but that's not what the specific entity exclusion says. You read the exclusion to say it won't cover any claim against those individuals as officers of CapWealth? That's the way it reads. Why is that? Because it excludes any claim. It just says CWIS, not CapWealth. It says CWIS or its directors, officers, or employees. Mr. Pagliara? Right, but I read that to mean the directors or officers of the named entity in the exclusion, which was CWIS, not CapWealth. I read it as in their capacity as offices or directors of capital investment advisors, not in their capacity as directors of the other entity. If it is read that way, then there should be coverage because the claim... Okay, that's kind of the way I read it, though. The claim that the Securities and Exchange Commission filed was a claim against them in their capacity as investment advisors for CapWealth. So it's excluded by the exclusion applies. Right, okay. So now maybe if we agree, we think the exclusion applies, what's your argument at that point? If the exclusion applies in that it excludes claims against Pagliara and Murphy in their capacity as CWIS officers or employees, then it doesn't exclude the coverage for the claims at issue because they were not sued in their capacity as officers or employees of CWIS. They were explicitly sued for their services as registered investment advisors for CapWealth advisors, which is obviously a key distinction. CWIS... Right, but even though they were sued in their capacity as, in their advisory capacity, let's call it that, they don't have coverage for anything related to CWIS, right? That's the language of the policy, just... Right, so they're sued in this capacity, but then there's an exclusion. I just don't see why it doesn't apply. Let me provide background, which I think will help explain, and this is all in the record of Mr. Pagliara's declaration. Before this policy went into effect, the company was insured by Chubb, by a federal insurance company, one of their affiliates, and they had two policies. They had an investment advisor policy, which had an endorsement that included insurance for broker-dealer services, and the broker-dealer services policy excluded any coverage for investment advisory services because it was only to apply for broker-dealer services. So under that scheme, there was no exclusion for an investment advisor who gets sued because some security was purchased using CWIS as an introducing broker-dealer. So in other words, under the prior scheme, where you had the investment advisor policy and the broker-dealer policy, this claim clearly would have been covered because there would have been no specific entity exclusion. There would have been instead a broker-dealer services policy. In this case... But that's not this policy. I understand. That's what I'm getting to. Connect the dots. Once CapWealth shut the broker-dealer down, it now just sought coverage for the investment advisor, and it needed only coverage for investment advisory services, which is what this Twin City policy does. In underwriting it, Stephanie Schoenwolf decided to make sure, quote, everyone is on the same page, not to limit or alter coverage, but, quote, just to make sure everyone is on the same page. That's her testimony in her deposition. She added the specific entity exclusion to cut out any broker-dealer claims, which would have been covered under what would otherwise have been a broker-dealer policy. So now are we... I see. So you need to say that the policy is ambiguous so that we can get to this testimony, this paroled evidence. Exactly. I think... I understand. When we look at this, and obviously these exclusions under Tennessee law, Kentucky law, Indiana law, all the law cited, have to be strictly construed against the insurance company, and obviously, relate to is an inherently ambiguous term because it can mean different things to different people. That's the definition of what ambiguous is. It doesn't say in any way relate to, I thought. It does say in any way relate to, yeah, which obviously is a very broad statement that reasonable people can interpret differently. And here, Judge Richardson... Well, in any way. In any way. What's the ambiguity? It's really broad. Well, the ambiguity is that in this particular case, the claims related to investment advice that the advisors gave to clients, allegedly they failed to disclose a conflict of interest. That is what the case related to. It did not, in a meaningful sense, relate to the fact that certain clients had purchased mutual funds that paid these things called 12B1 fees, which is where, in our view, respectfully, the district court got it wrong. And that's because you can arguably say relates to one or the other, either to the purchase of the underlying mutual fund or to the investment advice and the failure to disclose the existence of a conflict of interest, which would render the policy ambiguous. And in that case, you have to interpret it in favor of the insurer because obviously it was drafted by the carrier and the specific entity exclusion would have to give way to the insuring agreement, which provided coverage to Murphy and to Mr. Pagliara. And it leads us directly into the second issue, Judge Larson, because let's say this district court interpreted it correctly. The question now becomes, is there any case where coverage would apply? And that's the test that Indiana has adopted. A policy is illusory if it does not provide coverage in any reasonably expected set of circumstances, which is where we are here. If you actually read this exclusion the way the district court did, it excludes coverage for anything, quote, related to cap wealth investment services. Well, all of the services, the investment advisory services that these gentlemen provided relate to CWIS in the broadest sense because all of the securities on which they were providing advice were purchased initially through CWIS. What if they didn't purchase securities? What if the advice was, my advice is that you just hold steady with your investments as they currently exist and we make no changes right now. That's your advice and you're sued for giving them advice that they actually should have sold assets and bought something else and they really lost an opportunity. There would be coverage for that, would there not, for that advice? Under the district court's interpretation, no. No? No, because the underlying securities that the clients were being told to hold on to were purchased through CWIS. Therefore, the advice related to... It's not related to, that's a brokerage account, right, that deals with buying and selling of the stocks and the investments. But if you don't buy and sell, you don't even use CWIS, do you? If you do not buy or sell, you do not use CWIS. All right, so I'd say there is coverage for your advice if there's not buy and sell. Well, we have in the record, though, that this company had advisory accounts that were discretionary for more than, I think it's 95% of their clients. So they would never have gone out and purchased that kind of a policy, Judge Griffin, because it didn't provide the coverage that this company... Okay, that's the other thing. You know, this illusory doctrine, and we have to decide what the Tennessee Supreme Court would interpret this doctrine, if they even have the doctrine in Tennessee. But I see it more as, you know, nature of an unconscionable insurance contract, that the insurance company really has the advantage over the insured, and they've really pulled one over on the insured. Here you have sophisticated parties. You have investment advisors who are used to contracts and used to all this stuff. And it seems to me that this illusory doctrine doesn't have a good fit here when you've got sophisticated parties that know what they're doing, know what they're buying, and actually give advice to clients as to what to buy and this and that. And I question how broadly Tennessee would interpret this doctrine for sophisticated parties like we have. And that's one of the reasons, obviously, that we suggested potentially that the court might certify the question to the Supreme Court, but even if... Which was late. I mean, you didn't do it below. You lost below, and now you're doing it here. And I mean, our general practice on certification to state Supreme Courts are that we look at the timing of it, and we don't let you wait to see if you win or not below to do it. So I'm disinclined to certify it, just by the way. But answer my question about is this a good fit when you have sophisticated parties to broadly interpret the illusory contract doctrine? I think that gets us to issue one, Judge Larson's point that perhaps really what's going on here is the specific entity exclusion is ambiguous. Our folks are sophisticated. They knew exactly what they were doing, because they knew they needed coverage for investment advisory services, broker-dealer services. The policy here came and existed after the CIWS ceased to exist, right? It not ceased to exist, but was shut down. Was shut down. Okay, so the insurance policy came into effect after CWIS was shut down, and it has an exclusion of anything related to CWIS. So it's quite clear that anything to do with that brokerage account, the insurance company didn't want to insure or have anything to do with it. And to say that CAP advisors wanted coverage for the shut down entity, I mean, I don't quite follow that. It's the case, Judge Griffin, because this is a claims-made policy. Yeah. CWIS was only shut down in June of 2018, just a few months before the policy went into effect. So if there were to be claims made against CWIS, one would expect them to be arising sometime in the next three years. I mean, how could the insurance company be any more specific? Because we don't want to handle those. Those claims made are not covered here. What they were intending was to exclude were these broker-dealer services claims, which are completely different from investment advisor claims. But they're now, I agree, they're now relying on this very, very broad language to knock out advisory claims that were never intended by the parties respectively. I see you're out of time. You could use your rebuttal now, or you could... I'll go back. Thank you, thank you. I don't know what to say, but okay, you'll have your three minutes' rebuttal. Good morning. Good morning, Your Honors. May it please the Court. Matthew Beato for Twin City Fire Insurance Company. I'd like to first start where my friend on the other side left off, which is he said that the policy incepted a few months after CWIS closed. That's not correct. If you look at page ID 23 in the record, you can see the first page of the policy. It incepted in August 2019. So that's more than a year after June 2018 when the policy closed. So before this policy incepted, there was more than a year where CWIS did not exist and any claims during that time period that were made based on conduct occurring during that time period, by definition, could never implicate the exclusion, which under a claims made policy, it's typical that conduct that occurs right before a policy incepts, that's often the most frequent time period in which conduct that underlies a claim would be made. That's often the most frequent time period in which you'll see that, just because of the nature of the way that claims work. So here, what you have is the most likely claims would never even come close to implicating the exclusion at all. This is a very easy case. So if we look at the language of the policy, what it says is, the insurer shall not pay loss for any claim by or against, or based upon, arising from, or in any way related to any of the following entities, Cap Wealth Investment Services, LLC. This claim is a paradigm of a claim that implicates that exclusion. The SEC complaint, if you read it, is replete with allegations, the conflict of interest between CWIS and Cap Wealth Advisors, the name ensured. That's everything that the complaint is about. You can see the SEC writes in the first paragraph, it talks about conduct occurring from June 2015 through June 2018, which is when CWIS was shut down. It says that this was only an issue, the problems in this case, because Cap Wealth's affiliated broker dealer received those fees and shared them with representatives with CWIS. It talks about how Cap Wealth failed to disclose adequately the conflicts of interest between CWIS and Cap Wealth Advisors with respect to 12B1 fees. You cannot have a conflict of interest unless there's two interests in conflict, by definition. Here you have the interest of CWIS, the broker dealer, and the interest of Cap Wealth Advisors, the investment advisor. Those interests are inextricably intertwined with each other. By definition, every part of this complaint in some way relates to CWIS, the entity that's named in this specific entity exclusion. The nature of a claims-made policy is such that insurers commonly exclude conduct that starts before the claims-made relationship began. That's the first policy issued to that insured. Here, the first policy that was issued to this insured was issued from Twin City, was issued in August 2018, sorry, September 2018. Second one was issued in September 2019, and we're dealing with the second policy here. The CWIS had shut down right before the first policy incepted. I would say it's more common than not in claims-made policies, in my experience, having done this for over 12 years, to have a prior acts exclusion that excludes all conduct that occurs before the claims-made relationship was made. Twin City certainly would have been justified putting that exclusion here. I think it's a little ironic that a narrower exclusion that excluded only conduct that in some way related to the broker dealer that had just been shut down, that exclusion was put on this policy, and now the insured is saying it's illusory. I just don't see how- Can you give some examples of what this policy would cover? Absolutely. This is a policy, it's an investment advisors E&O policy, and it's designed to cover claims relating to the investment advice that an insured provides. Claims suitability claims saying, you invested me in the wrong stock, or you should have sold this stock at this time, given the way that CapWealth operated. Those sorts of claims. Those would never implicate the exclusion, whether it was before June 2018 or after, but certainly after. Even when the CWIS was in operation? Absolutely. That claim, well, it would depend on facts of the case, but I don't see most of those claims having to relate to CWIS. The underlying claim here was a unique- I thought that they put all of their clients into investments through CWIS, so if they're giving investment advice, like, you put me into this investment, and this investment was not right, given my risk preferences, or my age, or whatever, and then they purchased, they went into those investments, I think you said, you put me into, and you put me into them through CWIS, aren't they excluded? So first of all, if it happened after 2018, no, it couldn't be excluded, but let's say hypothetically that it was a claim based on pre-June 2018 conduct. That claim would not relate in any way to CWIS. It wouldn't mention CWIS, most likely. It's possible that there could be some issue with the execution that might involve the broker-dealer in some way, but most likely, that sort of claim, you wouldn't even see CWIS mentioned in that claim. And if Twin City got up here and made the argument that that claim was related to CWIS, I think we'd face a pretty skeptical bench, people saying that that sort of claim is not the type of claim that was intended to be excluded by this provision. I guess I don't understand that. So if the advice that CapWealth gives is, you should buy this stock, and that's bad advice. It's a very risky stock, and it's an elderly person who can't take that kind of risk. You should buy this stock. That's the advice. And then they sell them that stock through CWIS. I don't understand how that doesn't in any way relate to CWIS. So a couple things on that. First of all, only the testimony below is that at the highest period, only 90% of their orders were placed through CWIS, so you still have a fraction. Right, I get that. If you sold it through somebody else, then fine. And if we say, we're just focused on the claims rate. Okay, so in that situation, there may be a small attenuated relationship to CWIS. If you look at... Do you, as the insurer, would not claim that in any way related, excluded that? So I don't know what we would do, because we don't have that claim in front of us, and we have to look at everything. But I think if those types of claims with attenuated relationships, if you look at the Gregory case that's cited on page 32 of our brief, which is a Seventh Circuit case, what it talks about is there might be cases where a logical connection might be too tenuous reasonably to be called a relationship. But in that case, as here, the facts fit comfortably within the accepted definition of what it means to be related. So... But isn't the whole conflict of interest argument based on the fact that they were giving advice? So, I'm advising this elderly woman, please invest in this really super risky stock, and I'm going to sell you this stock through my own brokerage company, and I'm going to benefit from that. Like, that's the whole point of the SEC claim, right? So I just don't see how it's not related. Absolutely. So that claim is what we have here, and that's absolutely related. I thought... What I understood, Your Honor, to ask was a claim that did not include those allegations of a conflict of interest or anything like that. Well, let's just assume all those cases are related, okay? That kind of a claim.  You still have other claims that would have been paid out under this policy, it seems like. Absolutely, Your Honor. I mean, there's myriad claims. I guess under... Let's assume we're going to apply this reasonable foreseeability test. If we were to apply that test, how would you argue that there was some coverage that was reasonably foreseeable here? So if we adopt, that's a standard from Indiana that the Tennessee courts have not accepted, but let's say that they did. So if you look at the Sunset Strip case, which is cited on page 28 of our brief from the Southern District of Indiana, in that case, it was a tavern. It was an adult entertainment establishment, and they made 93% of their business was selling alcohol, and there was a liquor liability exclusion on the policy. And the court said in that case, well, you have 7% of your sales that don't have anything to do with alcohol, and that's enough to make the policy not illusory. Here, as I mentioned, during that time period, which again is 2018, you're having a whole year where 0% in any way involves CWIS in any way, shape, or form. But pre-2018, if it's 90%, that's under this Indiana standard, which is not the standard in Tennessee. I guess on the Sunset Strip case, the 7% would include the whole period of the policy. Your argument now is saying that as long as you have one year of the policy where it was providing coverage, that's enough, even if you didn't have any coverage the other portion of time of the policy. By definition, it has to be under this reasoning from Indiana. But I think here, it's a much greater swath of coverage given the year prior to this claims made policy, what we had here. Just addressing the language of the exclusion, I think what Mr. Bolsa was trying to argue is that what I heard him to say was that the exclusion was in the disjunctive between CWIS officers and CWIS itself. That's not exactly right. If you look at the language of the exclusion, it says, the insurer shall not pay loss for any claim by or against or based upon arising from or in any way related to CapWealth Investment Services LLC. And then it goes on to have an illustrative list, including but not limited to any subsidiary, trustee, receiver, assignee, director, officer, employee, shareholder, or beneficiary thereof. But in order to get to that including but not limited to language, you have to get through the first part, which is it has to be related to CWIS in some way. If there was some claim against Mr. Pagliera that did not involve CWIS in any way, you'd never get to that part of the exclusion. The exclusion wouldn't be triggered. So... There would be coverage then. Exactly. As long as his liability is not related to him being a director of CWIS. Exactly, your honor. That's kind of what I thought. And unless there's no other questions... I have none. Judge Bush?  Judge Larson? No. Thank you. Thank you, your honor. Three minutes rebuttal. Yes. Thank you, Judge Griffin. Let me just pick up with that same line of examination. Because the question that you asked, Judge Griffin, about the hypothetical advice to hold or the question that Judge Bush was asking about, you know, whether there were other claims that could be covered under the policy, what's important to realize is that that is an analysis that the district court never went through. When you look at pages 24 and 25 of Judge Richardson's memorandum of opinion, what the district court did was to say that this is what the law regarding illusoriness is, and he quotes Scottsdale Insurance, the Indiana case. Then he goes on and says, my holding is very narrow. I find that this exclusion would clearly exclude the claim that the Securities and Exchange Commission brought. And then he stops. He does not do what we've done here this morning and said, now let's take a look, let's test whether this policy is illusory, given my interpretation. Are there any claims that could arise where coverage would apply within any reasonably expected set of circumstances? That is not analysis. Did the parties present all the evidence that there is on this issue to the district court? Excuse me, Your Honor? Did the parties present all the evidence that you have to offer on the illusory point to the district court? Yes. So why can't we just address it ourselves? I mean, it's a de novo issue, isn't it, a question of law? It's a de novo issue, and I think that's important that we do address it. Now, if we address it here, that's fine, but... So you're not saying we need a remand for that. We can go ahead and address it ourselves. Well, I'm saying first, respectfully, Your Honor, that the district court erred by not conducting this analysis. But secondly... Right. But if it erred, then we can correct the error by conducting the analysis ourselves. If the lower court comes to the right result, but has the wrong rationale, we affirm anyway. And is that kind of what you're arguing, that because the rationale's wrong, we have to reverse or... I mean, we look at the result. I'm not arguing that, Judge Griffin, because the analysis simply isn't there. The question before... Okay, the analysis is all wrong, but guess what? The district court comes to the right result, we still affirm, right? I think the court does do that. But here, the question is, are there other claims that could be reasonably expected to be covered? I submit the answer is no, because the suitability claims that were being argued are claims against broker-dealers. There's no such thing as a suitability claim against an investment advisor. That's a breach of fiduciary duty claim under Section 206. So when we actually look at the record that's before the court, and look at the law as it applies from Indiana, were it to be adopted by Tennessee, there simply are no other reasonably expected set of circumstances that would give rise to a claim. Because even the claim that Judge Larson was hypothesizing about the elderly couple who was given bad advice about investing in a speculative investment would still be excluded under their interpretation, because that's effectively what we have here. So... Any further questions? For all those reasons, we ask the court to reverse order. All right. Thank you, counsel. The case will be submitted.